Good morning, Your Honors. Frannie Forsman appearing on behalf of Appellant Bravatti. With me is Richard Schoensfeld, who will not be arguing, but is available for any questions by the Court, who also tried the case with the assistance from my, with the assistant from my office, and he represents Mr. Eppolito. When the trial court judge ruled that the hearsay from the two uncles referring Mr. Corso, the confidential informant, to Mr. Bravatti, when the trial court excluded that testimony, the government's only evidence of predisposition prior to the contact by Mr. Corso was gone, was out of the case. They have never disputed it. We have raised that a number of times in our briefs before this Court, and the government has never said that they had other evidence available to them that would demonstrate predisposition of these two young men prior to Mr. Corso's contact with them. That's true. I mean, let's assume that that's true. Then how does a mistrial help them? I mean, they just go back to the same evidence again. Why would the prosecutor provoke a mistrial to start the case over again? For several reasons. Of course, we don't know because there was no evidentiary hearing, and that inquiry couldn't be made in that setting so that we could find that out. But for one thing, the standard that comes out of Kennedy and out of the other cases is that an acquittal looked inevitable to them at that point, which meant that they couldn't retry it. Now, they had a missing witness. They had a witness that was the former assistant United States attorney, had never come up in discovery, and the former AUSA was at a retreat for his law firm during the time that this case was tried. The prosecutor said several things in the hearing about that witness. One of them, he said that he wasn't available. He also said that as he continued talking with him, that what he was going to tell the prosecutor became less clear. So maybe they could clear up with the AUSA that testimony and try to salvage some predisposition testimony between the first trial and the second trial. But I think what's more clear is that the repeated attempts to get the court to change its mind. Now, granted, by the time the prosecutor got to his fourth attempt to try to get the trial judge to change his mind, Judge Proh was taking a very strong position that that evidence just wasn't coming in. The problem here is that when you look at the standards that were applied in Kennedy, the first one is deliberateness. Was the conduct of the prosecutor deliberate? I went back and I looked at the prosecutor's explanation at the time of the hearing on the motion to dismiss with regard to what he told Mr. Corso with regard to what he should say. And that is found at page, excerpt from record page 299. And what he told Mr. Corso to say was simply say he had been referred to, that they had referred him to Bravatti. That was precisely what the court told the prosecutor not to say. All he had to do after that ruling, all he had to do to be able to get to his case was play the tapes of the voice mails that he felt were necessary for context, play those tapes, and then say, did you talk to Mr. Bravatti eventually? Yes, I did. And what did you talk about? But he couldn't do that because that didn't give him what he needed. He needed to be able to do an end run around the court's order, to be able to hook the conversation that Mr. Corso had with Mr. Bravatti to the referral from the two unavailable witnesses. He needed to be able to do that. He tried to do it very skillfully. It ended up with the court calling it inartful. And then we get to the problem that occurred because of the lack of findings in this case, which I think does hamper your review. The findings in this case, there were no findings with regard to whether or not the prosecutor's responses were reasonable. It would be difficult to find that the prosecutor's responses in this case were reasonable. This is not a case where a prosecutor could come in, as they do in some of the cases that we've cited here that have been before this court, where the prosecutor has said, well, I never talked to the witness about this. We never talked about pornography, for instance, in the Hagegi case. That's what it was. All of a sudden, the witness is blurting out something about the defendant being involved in pornography. The prosecutor came in and said, but that never came up during our discussions, and therefore I was surprised. And this court and the trial court found that that was perfectly reasonable. There are no findings of reasonableness here by the judge. There are findings that the language used by the prosecutor in asking the questions of Mr. Corso did not demonstrate an intent to goad the defendants into a mistrial. There are not findings on whether the prosecutor's reasons were reasonable. There are not findings on whether or any kind of assessment as to how the case was going. Now, the government responds to our opening brief by saying, well, this was very early in the case. And yet we have repeatedly said this was the case. Mr. Corso was the case. The prosecutor has not suggested to you. The prosecutor's question was, what are those things? That question seems to me to elicit, well, selling drugs. That's exactly right. But the problem is it doesn't elicit Uncle Al Polito referred me to these guys. It can only be understood in the context of how the prosecutor put it together with the tapes, okay? That question in isolation, you would be absolutely right. But it's not in isolation. The couple of things comes from the previous voicemail in which he says, I had dinner with the uncles. They told me to call you. They told me to talk to you. And then the second voicemail saying, and I had dinner with the uncles, and I have a couple of things to talk to you. So you can't understand it. The question would have been so simple. Did you talk to Bravatti? What did you talk about? But he didn't do that. He had to hook the couple of things up with the dinner with the uncles. Because otherwise you could prove entrapment. Otherwise he had a huge problem with the entrapment case, with our entrapment defense, because he had no evidence whatsoever that these boys had any predisposition at all before Carso contacted him. And he knew the entrapment defense was coming. Oh, he absolutely knew it. From the very beginning of this case. The burden on the entrapment is on you, right? Well, it's a shifting burden. But, yes, the burden to bring it forward. And there was no question at this point, the opening statement of Mr. Schoenfeld went into detail about exactly how the entrapment defense would be laid out, which is, of course, another thing that the government got to, another piece that the government got to have and could use to its advantage in a second trial. The issue of the evidentiary hearing, while I think that this Court could simply reverse the decision of the trial court based upon the amount of deliberateness present here in what we pointed out in the record. But the issue of the evidentiary hearing, I think, is important because this Court has had occasion twice recently to address the issue of what the Court should do when presented with this issue in both Hagegi and in Rodriguez. There are two factors that the Court looks at. The first is whether or not, let me get mixed up between the Kennedy standard and the Kennedy standard. The first is the reasonableness of what's right. What do you do with the fact that the ‑‑ it was early in the case, the government argues that there was no indication the case was going badly, and the government opposed the mistrial. The government sort of opposed the mistrial. The government argued that it wasn't deliberate. But the government basically was trying ‑‑ the government prosecutor was basically trying to say I wasn't deliberate in what I do. But the government agreed that he couldn't defend Corso's violation of the court order. The government agreed that there was no way to cure what had happened with Mr. Corso, both on the record, both cited in our briefs. I would like to reserve a minute for my rebuttal, if I could. Thank you. Good morning. May it please the Court, Counsel. Elizabeth Olsen on behalf of the United States. The question here is, in this case, is whether the prosecutor intentionally provoked or goaded the defendants into requesting a mistrial. The district court found that he had not. In fact, the district court found that the record before the court did not support any finding of intentional provocation, and without any such showing on the part of the defendants, it was unnecessary for the court to hold an evidentiary hearing. Now, the district court reached this conclusion after extensive briefing and a lengthy hearing at which the defendants had the opportunity to present their suspicions about the prosecutor's motive and intent, and the prosecutor had an opportunity to respond to those and to answer the judge's questions about why he asked the questions the way he did, what he had intended. If the issue is what the government intended, intention is an issue of fact, why wasn't there an evidentiary hearing as to what was the intention of the government attorney? Because the district court determined after a lengthy hearing that an evidentiary hearing wasn't warranted. So determined after a hearing at which evidence wasn't taken but argument was made. Exactly. Is that sufficient? I'm sorry? Do you think that's sufficient? Oh, it often is. I mean, district courts have discretion. I mean, they have to make decisions every day, and sometimes they decide that they need an evidentiary hearing to do that, and sometimes it's clear that they don't. The defendants had made no showing. There was simply nothing. I think there are two aspects of this that are worth careful attention. One is what exactly happened that prompted this mistrial motion and what happened immediately thereafter. And second of all is the defendant's theory of why the prosecutor would have wanted to provoke a mistrial. The defendant's theory is that this was an entrapment case, that the only evidence of predisposition the government had was the confidential informant's testimony that Louis Eppolito and Steve Caracappa had referred him to Mr. Bravatti for drugs, and that without that evidence we had nothing. And so the prosecutor was going to intentionally provoke a mistrial in the hopes that at some point prior to retrial, he would be able to convince the judge to change his mind about that excluded evidence. Now, that theory is implausible for two reasons. First of all, this was not an entrapment case, or at least no decision had been made. The district court on Excerpt of Records 60 and 61 had specifically said he hadn't decided yet whether the defendants were going to be entitled to an entrapment instruction, and the government's position is that they would not be. Because in order to get that instruction, the defendants have to first bring forward some evidence of lack of predisposition, and they had not done that. Second of all, even if this were an entrapment case, even if ---- Did either of these men have a drug-dealing history? They did not. They had no prior convictions. But if the lack of a prior conviction alone was sufficient to show lack of predisposition, we'd have entrapment instructions in every first-time drug-deal case, which I don't think is the rule. And in any event, what the government did have and what the jury would have heard, I believe actually did hear later in that afternoon, is the audio tape of the meeting between our confidential informant and the two defendants. When the confidential informant said, I've got these people coming in from out of town, I need to get them an ounce of methamphetamine, six to eight ecstasy pills, and defendant Anthony Eppolito said, yeah, that's no problem. And then he said, do you only need an ounce? And then he said, do they want any other drugs? Later in that same conversation talking about drugs and hookers, the defendant Guido Bravatti said, we've got access to everything. Well, given that, and given that Judge Pro had specifically excluded the referral evidence, why would the prosecutor jeopardize the trial by asking the question in that way? Yeah, and this is the other piece, to look at exactly what the prosecutor asked. And just in terms of the factual basis for this, I want to apologize. Both the government and the defendants have a little error in our factual, our statement of facts. We both talk about there being two audio taped messages that were played for the jury before this exchange. In fact, there were three. The first was the voicemail message from the confidential informant to Mr. Bravatti, saying I had dinner with Lou and Steve, they gave me your phone number, I talked to them about what I wanted to talk to you about. The second was Mr. Bravatti's voicemail message back to Mr. Eppolito. I'm sorry, Bravatti's, back to the confidential informant. And then the third, the audio tape that was played immediately prior to this exchange was a phone conversation, was a taped recording of a phone conversation between the confidential informant and Mr. Bravatti, and the informant said, I want to talk to you about a couple of things. One, I need some help on, and two, I think I might be able to help you out on. Can we have dinner? And they make arrangements to have dinner that night. Now, immediately after playing that tape, the prosecutor says to the confidential informant, who's the witness on the stand, you said you wanted to talk to him about a couple of things. What were those two things? Very specific question. The witness did not answer the question. The answer to the question was, I wanted to try to get some tax clients from him, from Mr. Bravatti's involvement in some businesses in Las Vegas, and I wanted to buy drugs. That would have been the answer that would have been responsive to the prosecutor's question. But wasn't it incumbent upon the prosecutor to coach that witness?  He knew the possibility of the witness stating something that was going to violate it. His responsibility was to make sure the witness didn't violate it. Absolutely. And he tried. And this was discussed at length at the hearing on the motion to dismiss with prejudice. But one of the things that you can tell from the record is the extent to which the prosecutor coached this witness. It actually got comical at some point fairly early on in the witness's testimony because he wouldn't say the name Louis Eppolito. And so in sort of preparing the background information of how you met these guys, he'd say things like, well, someone who was very close to Tony Eppolito had this party that I went to. And at one point he said, you know, someone who's a good friend of Tony Eppolito's. That's my language of friend. And the defense attorney at one point called a sidebar and said, why is he saying friend? We're talking about his father. And the prosecutor said, well, you know, I've told him. He's obvious he's being very careful because I've told him that we're not supposed to go into stuff about Louis Eppolito. I will point out that the page 299 that defense counsel just cited in her argument, where the prosecutor was explaining that he had told the witness that he couldn't, that he could use the referral but not go into any specifics. If you read the next paragraph, what the prosecutor is saying at that section of the hearing is that was my understanding. And then after opening statements, when I asked for clarification and learned that I couldn't even do that, I went back to him and said, don't say anything about the contents of this conversation with Louis Eppolito. I think what bothers me is that after that, when he said, wait a minute, I can clean this up, right, to the judge. I'll clean it up with some further examination. Well, in the process of doing that, the question was, all right. Then the second reason you were calling him was to seek drugs. Is that correct? Now, what was the purpose of arguing that? This is exactly. He was cleaning it up. Yes. And there was nothing improper about that. And if you look, right after the exchange that created the problem and there was a sidebar and a motion for mistrial, the prosecutor said, I can clean this up, and here's how I propose to do it. The witness had used the word referral. He wasn't supposed to use the word referral. So if I can ask some leading questions, I'll try to reframe that answer so that the referrals were about tax clients. I'll get him to say that he wanted referrals for tax clients to sort of tie the word referral. Which is what he did until that second question I just referred you to. Exactly. But when the prosecutor is explaining to the judge at sidebar, here's what I propose to do. So I'll link the word referral in the jury's mind with the tax clients, and then I'll say, and the other reason you wanted to talk to him was for drugs. And both defense attorneys said that. Well, how would that help? Because there was. If he had two reasons, and one of them was to refer him for drugs, that got right back into the whole question. No, but it wasn't referring him for drugs. What the prosecutor said that he tried to get the witness to say is that the two reasons that he was calling Bravatti was first to get referrals for tax clients, and second, because he wanted to get drugs. Now, at that point, and it's worth noting on pages 225 and 226, both defense counsels said, no, wait, he can't say that. That's exactly what this court had excluded. And the judge said, no, it isn't. Of course he can say he wants to talk to him about drugs. That's what this whole case is about is drugs. And so then the prosecutor went back, did exactly what he had proposed to do, and that's where we are today. I see my time is up. Thank you. Ms. Forsman, one question I forgot to ask you. The denial of a motion for double jeopardy is reviewed de novo by us. True? That's correct. But the factual findings at the bottom of it are reviewed for clear error. I agree with that. And the district court made a factual finding that the intent of the prosecutor was not to cause a misdemeanor. He did, but the process that the court used to make that finding was not appropriate because the basis for the factual finding, he didn't make findings on the critical factors to be considered. What Judge Proh did was to simply say the form of the question, the nature of the question itself, looking at no other evidence, because that's what he says in his order. You have to buy it. You massaged that finding of fact into an error of law because he didn't use the proper procedure. Well, he didn't use the proper procedure, and the finding of fact isn't on the issue that are relevant to the determination. The issue is not whether or not simply the form of the question asked of a witness is what evidence is intent. The issue is, is what was the intent. The problem is, is the judge only looked at the question. If I could have just one point is, is that the burden with regard to predisposition is on the prosecution, not on the defense. We must show inducement, and the prosecution must come in and show predisposition. And I would note for the court that, once again, the government has not said that they had any other evidence of predisposition prior to the time that Mr. Corso contacted. I would ask that the court look at page 6 of my reply brief with regard to the description of what Mr. Hennick would say, the former AUSA, would have said and was telling the prosecutor. That's part of the prosecutor's explanation about what Mr. Hennick was about, and a new trial would permit them to get Mr. Hennick back online so that they would have some evidence. Well, I do have a question to clear up in my mind. The idea first was the problem that he was referring him for drugs, right? And then he says, well, I can clean this up. And he then cleans it up by saying, well, one of the two reasons you referred to was for drugs. Now, was that presented to Judge Proe, and Judge Proe said, yeah, that cleans it up? No, that's not what Judge Proe said. What Judge Proe said was, obviously, the witness can talk about drugs because that's what this case is about. And the question would have been, you know, what did you talk about? And the witness said, well, we talked about drugs. The problem was is the prosecutor was asking the reason why he called was not relevant, and the only reason he had to put it in as a why question, why did you call him, was because that hooked it back to the meeting with the uncles which had been precluded. So that's why the question was framed, in our opinion, in that way. Judge Proe didn't say, yes, you can go ahead and say you referred for drugs, that's why you called. He said exactly the opposite. All right. Thank you very much. Thank you, Ernest. The case of the United States of America versus the Bravado Annapolito will stand submitted.
judges: Hug, Bea, Edmunds